We'll move now to Harris v. Hixon, please take your time getting to the bench. Mr. Jones Yes, Your Honor. May it please the court. I'm Craig Jones from Washington, Georgia, which has the distinction of being the first place in the world named after George Washington, so named before the war was even over, and that spirit lives on. There's three issues in this case. Two of them are Fourth Amendment issues. One is a Daubert issue, and I thought what I'd do is spit out my bullet points first, and then you can tell me what you want me to focus on, if you have a preference. There are two types of Fourth Amendment issues. My client lost a job and a security clearance at Fort Gordon based on an unfounded arrest. No one disputes that he's not the guy. The two Fourth Amendment violations are, first of all, a constitutionally deficient investigation, and secondly, a constitutionally deficient arrest warrant, and they're two different agencies. One does the faulty investigation, another one does the false or misleading warrant, and there's basically four points that I'd like to make to show that this constitutionally deficient investigation is actionable, that the officer is not entitled to qualified immunity. First of all, there is a clearly to do a reasonable investigation. In this case, there was no investigation, just a misidentification based on an officer's memory that somebody on a grainy video looked like somebody he'd spent an hour with a year and a half earlier. No investigation at all. That's just simply not true. I mean, if you want us to decide a hypothetical case that has no relation to the facts in this case, fine, but the officer did a lot of investigation. He interviewed people, he attempted to get video and so forth, and he showed a photo. I'm talking about the both of them before there was an arrest, and it just it doesn't help when you come up here and state facts that aren't consistent with the facts in this record. Well, it really does. The investigation, counsel, the investigation in this case was more thorough than I have seen in cases that come before us, which we've blessed, in violent crime cases. Well, it's also less investigation than other cases where y'all held that the investigation was deficient. For example, one y'all know that's not true. You tell us, counsel, you tell us another case, you describe the facts in it, in which there was less investigation than this. If you're talking about the case involving things like number of tattoos somebody had, and the officer didn't even bother to check it out, or the person being arrested said, here's a document, I have permission to be taking this from the house, I have permission to be here, and the officer who had a self-interest refused to even look at it. That's not the facts. Well, I'm going to guess that you weren't on the panel but granted the request for oral argument in this case, but I'll tell you what my view of the facts is. Counsel, counsel. Yes, your honor. That has no basis in this whether I granted oral argument or not. It doesn't mean there was a bad investigation because somebody, somewhere, sent this to oral argument. Well, let me start with the facts. The facts were that a car was broken into, a wallet and credit card was stolen, and that particular card was used to make seven dollars and two cents of fraudulent credit, debit card transactions at a red box video machine. A security camera took a grainy video of a fellow who was taller than the red box machine, who had angular bone structure and cornrows on his head, and the officer who looked at the video said, that looks like George Harris, who I arrested in a disturbance at a McDonald's a year and a half ago with a bunch of other kids, and he made no attempt to surveil him. He did not surveil him. He did not interview him. He did not look for current pictures on was several inches shorter than the top of the red box machine. Number two, he has rounded, very pleasant pictures. He doesn't look like the sinister guy, you know, who's using the the red box machine, and he also, his dreadlocks are about a foot longer than the other fellow's hair. It takes, some people in the audience can probably attest to the fact, it takes a couple years to grow your hair that long, and in fact, all he did was ask three other people in the office, do you agree that, you know, this looks like this guy here, this mug shot from a year and a half ago, do you agree that it looks like this fellow on this video, and a jury could construe that as that he harbored doubts. The fact that he asked someone, if he harbored doubts, and he certainly had a duty to investigate, to rule those out, but more importantly, so counsel, your position is, if an investigating officer does more than the absolute bare minimum, so that some lawyer in the future for the arrestee won't claim he didn't do a thorough investigation, if he does a thorough investigation, if he checks, rechecks, and checks again, a jury could infer from that, that he had doubt, and therefore, it was a bad arrest. Well, that's one thing, if I could get back to my bullet points. No, no, no, no, no, no. Is that one of your arguments? My argument is, that there is a duty to conduct a reasonable investigation. I understand that, but I heard counsel, yes, counsel, answer my question. Are you saying that if an officer does more than the bare minimum, a jury can infer from that, that the officer had doubts, and therefore, it was a bad arrest? Is that one of your arguments? Well, this court has said, yes, that that is one basis. There are two bases, which for requiring an investigation, rather than simply relying upon what might otherwise be arguable probable cause. First of all, we don't even have arguable probable causes case. We just have a guy who looks like approximately 10,000 other young black males in their early 20s who live in Augusta, Georgia. But what, there's two ways, and let me, for example, look at Cozy v. Birmingham. It says, citing the Kingsland case, officer may not turn a blind eye to evidence suggesting that a suspect is innocent by, one, choosing to ignore information that's offered him, or by electing not to obtain easily discoverable facts. These are easily discoverable facts here. What were the easily discoverable facts in Cozy? The crime scene photographs showed that the perpetrator had multiple tattoos on his arm, and when the officer arrested the suspect, it was plainly obvious to all that he had one tattoo, not multiple tattoos, and therefore couldn't have been the person portrayed in the crime scene video. Correct? I believe that's a fair summary of that case, but there are, there's a duty to investigate, and in most cases, the hazy line, there's a hazy line between what is a reasonable investigation and what is an unreasonable investigation. In this case, I would submit to you that under the facts, view of the facts most favorable to the plaintiff, which is on a motion for summary judgment, the jury could find there was no investigation at all. The guy was just operating on hunch. He asked someone else to confirm his case. This is a $7 financial crime that could put someone in prison for eight years. The felony, being a felony to make a unauthorized $3 bank card transaction in Georgia, I guess has something to do with the power of the banking lobby. But anyway, you weigh the, look at the going out to interview the guy, going out to surveil the guy, see if he looks anything like that, see if he's got an alibi, see if there's anything that could connect him to the theft of the car at all. Now the affidavit, now this is the other part of it, I don't think you're going to have a lot of disagreement with this. You guys recently held in Luke v. Gulley, under longstanding Supreme Court precedent, an officer must provide particular information to support an arrest warrant. Our precedents agree that an officer who seeks an arrest warrant based on a conclusory affidavit that's clearly insufficient to establish probable cause is not entitled to qualified immunity. The unlawfulness of, in other words, that warrant in that case, and basically this is not in the brief, but this is in a Rule 28F letter, 28J letter, Supplemental Authority, there's no supporting facts here. It simply says that this man was identified as the culprit. It doesn't say who identified him, how he was identified him, it doesn't show photographs, it doesn't show video, the magistrate's required to make an showing photographs that three middle-aged white men thought looked like a black guy on a video to the magistrate judge, who happens to be an African-American female who's more attuned to male features, and saying this is how we identified him, here's the picture, here's the video. None of that was done. The affidavit is deficient even if the investigation was not. I'm not conceding that point, obviously, but it looks like I've used all my time and I appreciate the focus. Thank you. Thank you. You've reserved your three minutes. May it please the court. Good morning. My name is Jim Ellington. I represent Investigator Joseph Bultman of the Columbia County Sheriff's Office and will be arguing on his behalf today. This case involves a reasonable misidentification in the performance of an officer's duty. Under long-standing principles of qualified immunity as held by this court, qualified immunity exists in this case. As was discussed in my opponent's oral argument, there was an investigation, a detailed investigation conducted by Investigator Bultman in this case. He contacted the victim's financial institution. He obtained the credit card usage transaction details. He learned that the card was used at two red box locations and two gas stations. He went to the gas stations, he went to the red box locations and viewed security camera footage. He observed the red box suspect on that footage. He had had not one, but two previous encounters with the plaintiff in this case. One was involving a melee at a McDonald's restaurant when the plaintiff was arrested. Since you've got limited time, I'm going to stop you speaking for myself and probably for Judge Carnes. I think I'm generally comfortable with the investigation. My concern is more about the conclusory nature of the affidavit and where that takes us. Your Honor, my client, Investigator Bultman, had handed over the case prior to the preparation of the affidavit for the warrant. I will defer to my colleague, Mr. Frails, when he will address the affidavit issue. Let me say, however, even though Investigator Bultman was not involved in preparation of the affidavit itself, if you look at the case of Luke v. Gulley, which was decided back last fall, if I'm correct, that case is distinguishable under the facts of this case. In that case, in fact, the investigator who filled out the affidavit in that case substituted one brother for another, one Mr. Luke for another. There was a misstatement in that affidavit. That's not the case here, but again, I will have to defer to Mr. Frails on that one. His client was the investigator involved in preparing that affidavit. Now, Your Honor, you've indicated a comfort level with the detailed investigation conducted by my client in this case, so I'll move forward from there. The plaintiff in this case has abandoned his state law claims here on appeal, so we are dealing solely with Section 1983 claims that he makes in this case. That's a de novo standard of review, and each defendant in this case is entitled to a separate qualified immunity analysis, which is what occurred at the district court. It's undisputed in this discretionary authority. As a result, the burden then belongs to the plaintiff in this case to overcome qualified immunity, and he fails to do so. The elements of a Section 1983 malicious prosecution claim are first an unreasonable seizure and violation of the Fourth Amendment, as well as the elements of the common law tort of malicious prosecution. Those elements are not met here. To obtain qualified immunity, it is only necessary that Investigator Bultman show that there was arguable probable cause, and there was indeed arguable probable cause here. Indeed, there was probable cause. The reasonable misidentification cases decided by this court emanate originally from a case entitled Rodriguez v. Farrell, a 2002 case decided by this court. The primary case that we rely on is Rushing v. Parker, which is a case in which there was a misidentification by the victim of the crime. The victim of the crime pointed out in a photo lineup that a particular Scott Rushing was indeed the suspect. Since you're talking about misidentification cases, it sounds like you do concede at this point that it was a misidentification. The record isn't clear about why the charges were dropped. I'm just wondering. The record is unclear as to why the charges are dropped in this case. It simply says that the district attorney decided that there was not sufficient evidence at that point, and he dropped the case. We don't really know why the district attorney dropped the case, but even assuming that you got the wrong plaintiff, or the plaintiff was not the suspect. I don't understand that answer. You say the record doesn't reveal why the charges are dropped, then you said the record reveals the DA said the evidence wasn't sufficient. Well, the statements are not consistent. Well, the DA indicated, and I don't recall the exact language that he used, it is in the record regarding what the reason was he indicated that the charges were being dropped in this case. I will defer to what the record reflects in that matter. Regardless of whether it meets the standard for poor investigation of the Fourth Amendment, obviously it seems like something went wrong here, correct? Well, when you say something went wrong here, we wouldn't be in a court if something hadn't gone wrong. Obviously, every case that comes before the court, something has not taken place. Something has occurred that has led to a particular lawsuit, but in this case, there's arguable probable cause to indicate that what Investigator Bultman did was, assuming it's a misidentification, it was a reasonable misidentification. If you look at the pictures of the two individuals, they are very similar, and Investigator Bultman's affidavit that he submitted in support of his motion for summary judgment details the similarities between the plaintiff in this case and the suspect, including the color of the skin, the eyebrows, the type of hair that each had, the facial similarities. These individuals looked very similar to each other, and it was based upon not one but two previous encounters that Investigator Bultman had with this individual, and he spent a total of 60 to 90 minutes with the individual. It's not like he just threw something against the wall and hoped it stuck. So, in this case, there's no evidence that Investigator Bultman acted with malice and without probable cause, and the Cozy case that my opponent relies upon is completely distinguishable. In that case, you had an investigator who was told that Mr. Cozy didn't have the same tattoos as the suspect. Mr. Cozy was outside the house. He completely failed to go and check that information out. The detective in that case had red alerts going off that the plaintiff was not the guy. The detective in that case blew through the stop sign, blew through the red lights. There were no such red alerts. There were no stop signs. There were no red lights in this case, and with respect to the Daubert motion, I will defer to my brief on that issue as I'm out of time. My opponent did not address that issue, and I will turn things over to Mr. Frailes. Thank you. Mr. Frailes. Good morning. My name is Randy Frailes, and I represent Officer Hickson. I'm also representing the Richmond County Sheriff's Office. We're here on this case basically based upon Bultman's investigation. In reality, when we really look at the facts based upon Bultman's investigation, and because he did such a good investigation, Officer Hickson could rely upon what Bultman done in his investigation. First of all, he had contact with the individual on two occasions where he had spent at least 60 to 90 minutes, records flat, on those two occasions. He was very familiar with the suspect. He's very familiar with Harris. He also pulled the videos from the red box. He went to Sir K's. He did a thorough investigation. Case law says that if, in fact, he does a thorough investigation in his jurisdiction, that Investigator Hickson has the right to rely on his investigation. Doesn't our case law also say that the warrant can't be conclusory? I would disagree that warrant is conclusory. The warrant is not conclusory from the standpoint that it indicates that the individual wasn't identified. It also lists Bultman as a witness on the warrant. There are no materially false information on the warrant. Furthermore, Investigator Hickson did not omit anything that was within his purview or within his knowledge on the warrant. It was not like he admitted obsculpatory information on the warrant. He didn't change anything on the warrant. If we take a look at the Gully case, as co-counselor indicated, the Gully case, they substituted the individual's name. Demetrius, I believe it was David, they substituted a name. After the officer had done his investigation, he swore out a warrant for another individual where the informant had given him information, a different name. In this case, we don't have an informant. Generally, when you have an informant, such as in Gully, you're required to get additional information. Are you identifying your position based on Bultman's investigation, which was not communicated to the magistrate? It was not communicated to the magistrate. Where Hickson got his information and all of it was not communicated to the magistrate issuing the arrest warrant? If you look at the full... case, the affidavit does not specifically say that he received the information from Bultman, but the affidavit lists Bultman as a witness. I understand that. What is the judge supposed to be drawing from that? Well, the judge is supposed to be drawing from that. Maybe the judge is supposed to ask a bunch of questions of Hickson and get all the information out and somehow get it on the record, but that didn't happen here. In this case, the judge who reviewed the affidavit based upon the information on the affidavit, it says he's been identified. He had been identified. We don't know by whom or what. It did not say by whom or what, but as I stated before, it did list Bultman as a witness on the affidavit. As to whether or not the magistrate inquired, certainly the record doesn't state. Do you think the magistrate here is at fault for not inquiring? No, I don't think the magistrate is at fault. The magistrate should be able to rely exactly on what's presented. And I believe in this particular case, the magistrate justifiably did rely on what was presented. It would be a totally different matter if, in fact, we were dealing with a confidential informant. It would be a totally different matter if, in fact, there was exculpatory- Bultman's name is not mentioned. I believe even if Bultman's name is not mentioned, I believe that the affidavit still stands. I believe that it still is an affidavit. And furthermore- Why, under our precedent? Because if that's true, then I would think that in any case, you could say police identified the perpetrator as Ed Carnes, and that's enough for an arrest warrant. That can't be the case. Well, that was the case in Gully. In that particular case, and as I stated before, that dealt with an informant. The affidavit did, in fact, list Bultman as a witness for this particular case, and I believe that that was sufficient at that time. What if there had been no- There was no really evidence of the investigation in the warrant? So, was the magistrate tasked with imagining that there had been an investigation because there was a witness listed? I don't believe the magistrate was tasked with imagining anything. I believe the magistrate made the decision, being a disinterested magistrate, he made his decision based upon the four corners of the affidavit, and I believe there was sufficient information on the affidavit for the magistrate to issue the warrant. What is he supposed to infer from the fact that Bultman's name is there? Is there an inference to be drawn? There is. What is the inference that he's supposed to draw? Well, when you look at the affidavit, we know based upon the affidavit that Bultman is a police officer. It lists his address on Camp Road. So, what's the magistrate supposed to infer from that? The magistrate should infer that Bultman is the witness who identified the plaintiff in this case. That's what should be inferred. In conclusion, we believe that Mr. Hickson is entitled to qualified immunity. We believe that the affidavit did not have any false statements, did not contain, there was no information omitted, and I believe my time is up. Thank you. Mr. Jones, you've reserved three minutes. Do you wish to take it? Basically, the four bullet points here, and we can focus on the basis for these in a minute, but our contention is, one, there's a clearly established duty to do a reasonable investigation. It is not always clear what is a reasonable investigation, and if that's not clear from clearly established law, whether the investigation was reasonable or not, then clearly the officer is entitled to qualified immunity. In this case, a jury, we submit that a jury could find there was no investigation to confirm this faulty identification, and unlike most misidentification cases, this is not an officer relying on an identification made by a third party that he's got no reason to doubt. This is from his own memory, based upon the thousands of people that he's interacted with in the last year and a half, that the fact that somebody he spent an hour and an hour and a half with says, oh, it looks like that guy. Let me ask some other folks to look at the pictures and see if they agree, and those either. So the point, our argument is, no matter how fuzzy the line is, okay, for qualified immunity purposes, if there was no investigation, then no reasonable officer could possibly believe that the failure to conduct any investigation was a reasonable investigation. Suppose there's an adequate investigation. Yes. We're going to change the facts a little bit. Yes. Bultman does an adequate investigation. Yes. And he communicates the investigation to Hickson. Yes. And when Hickson prepares the affidavit, which Bultman does not see. Yes. Let's assume the affidavit's inept. It's not sufficient. Yes. Where does that leave Bultman? Bultman has qualified immunity. Bultman did a perfect investigation. There's no claim against Bultman in that case. You're not listening. Oh, I'm sorry. He communicates everything that's needed for probable cause to Hickson. Yes. But Hickson's affidavit is inadequate. Yes. Where is Bultman? Bultman is got free. I don't even sue Bultman. Do you hold Bultman liable? You can. On what theory? I don't know if that's the case. On what theory? Well, I would not sue him in that circumstance. I would simply focus upon the sufficiency of the affidavit, because I think the law is clear on that. But there are cases you can imagine where- Because there's a causation problem. Yeah. Well, hypothetically, if the investigator who took out the affidavit knew what Bultman's investigation consisted of, he could have a duty to go back and say, are you sure this is the guy? Or the investigator himself who took out the affidavit should have probably done his own investigation. But under the facts you've asked me to assume, I don't believe that Bultman has any liability. So I guess- Well, I've got a few seconds left. As far as the Daubert issue goes, here's the problem that I have and I- All right, no one's discussed that yet, so I think you're not allowed to bring it up at this point. But I guess as a rhetorical point, if it's a problem with the trial court holding that an officer who is purely speculating about a comparison between a grainy video and a memory of someone he arrested a year and a half ago in a town of 200,000 people that's 40% African American, that that is not speculation. That's arguable probable cause. Someone from the L.A. County Police Department cannot testify about investigative techniques, but that is speculation. Thank you. Thank you. We've got your case.